Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PIPPINS, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ABBVIE INC., RICHARD A. GONZALEZ, and WILLIAM J. CHASE,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff David Pippins ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding AbbVie Inc. ("AbbVie" or the

- 1 -

"Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of AbbVie between October 25, 2013 and September 18, 2018, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as AbbVie conducts business in this Judicial District, and the alleged misstatements entered and subsequent damages took place within this District.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

Class Action Complaint for Violation of the Federal Securities Laws

**PARTIES**

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased AbbVie common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

7.      Defendant AbbVie is a Delaware corporation. AbbVie discovers, develops, manufactures, and sells pharmaceutical products worldwide. The Company's securities are traded on NYSE under the ticker symbol "ABBV."

8.      Defendant Richard A. Gonzalez ("Gonzalez") has served as AbbVie's Chief Executive Officer ("CEO") since 2012 and serves as Chairman of the Board of Directors.

9.      Defendant William J. Chase ("Chase") has served as AbbVie's Executive Vice President, Chief Financial Officer ("CFO") during the Class Period.

10.      Defendants Gonzalez and Chase are collectively referred to hereinafter as the "Individual Defendants."

11.      Each of the Individual Defendants:

(a)      directly participated in the management of the Company;

(b)      was directly involved in the day-to-day operations of the Company at the highest levels;

(c)      was privy to confidential proprietary information concerning the Company and its business and operations;

(d)      was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)      was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

- 3 -

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

12.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Factual Background

15.     HUMIRA is AbbVie's blockbuster drug, which is used to treat Crohn's disease, rheumatoid arthritis, ulcerative colitis, psoriasis, and other ailments.

16.     In 2017, HUMIRA's sales were $18.4 billion. HUMIRA accounted for approximately 65% of AbbVie's net revenue for the fiscal year.

17.     On April 5, 2013, the Company filed its amended annual report for the fiscal year ended December 31, 2012 on Form 10-K (the "2012 10-K/A") with the SEC, which provided the Company's annual financial results and position. The 2012 10-K/A was signed by Defendants Gonzalez and Chase.

18.     The 2012 10-K/A provided the Company's strategic objectives, stating in relevant part:

**Strategic Objectives**

> ***AbbVie's long-term strategy is to maximize its existing portfolio through new indications, share gains, increased reach and geographic expansion in underserved markets while also advancing its new product pipeline. To successfully execute its long-term strategy, AbbVie will focus on expanding HUMIRA sales, advancing the pipeline, expanding its presence in emerging markets and managing its product portfolio to maximize value.***
>
> ***AbbVie expects to continue to drive strong HUMIRA sales growth in several ways. AbbVie seeks to expand the HUMIRA patient base by applying for regulatory approval of new indications for HUMIRA, treating conditions such as axial and peripheral spondyloarthritis and uveitis. AbbVie will also seek to drive HUMIRA sales growth by expanding its market share and its presence in underserved markets.***

(Emphasis added.)

## Materially False and Misleading
## Statements Issued During the Class Period

19.     On October 25, 2013, the Company filed a Form 8-K with the SEC announcing its third quarter 2013 fiscal results ("3Q 2013 Press Release"). In the 3Q 2013 Press Release, Defendant Gonzalez stated that AbbVie's "third-quarter performance demonstrates the strength and durability of our product portfolio and the continued execution of our key strategic priorities as an independent biopharmaceutical company[.]"

20.     On February 21, 2014, the Company filed its annual report for the fiscal year ended December 31, 2013 on Form 10-K (the "2013 10-K") with the SEC, which provided the Company's annual financial results and position. The 2013 10-K was signed by Defendants Gonzalez and Chase. The 2013 10-K also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Gonzalez and Chase attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

Class Action Complaint for Violation of the Federal Securities Laws

21.    The 2013 10-K enumerated the Company's strategic objectives to "drive HUMIRA sales growth[,]" stating in relevant part:

**Strategic Objectives**

AbbVie's long-term strategy is to maximize its existing portfolio of products through new indications, share gains, increased geographic expansion in underserved markets while also advancing its new product pipeline to meet unmet medical needs. ***To successfully execute its long-term strategy, AbbVie will focus on expanding HUMIRA sales, advancing the pipeline, expanding its presence in emerging markets and managing its product portfolio to maximize value.***

***AbbVie expects to continue to drive strong HUMIRA sales growth in several ways. AbbVie seeks to expand the HUMIRA patient base by applying for regulatory approval of new indications for HUMIRA, treating conditions such as uveitis, hidradenitis suppurativa and pediatric Crohn's disease. AbbVie will also seek to drive HUMIRA sales growth by expanding its market share and its presence in underserved markets.***

(Emphasis added).

22.    The 2013 10-K stated the Company is subject to anti-kickback laws and state laws relating to sales and marketing practices, stating in relevant part:

**Laws and regulations affecting government benefit programs could impose new obligations on AbbVie, require it to change its business practices, and restrict its operations in the future.**

The health care industry is subject to various federal, state, and international laws and regulations pertaining to government benefit programs reimbursement, rebates, price reporting and regulation, and health care fraud and abuse. In the United States, these laws include anti-kickback and false claims laws, the Medicaid Rebate Statute, the Veterans Health Care Act, and individual state laws relating to pricing and sales and marketing practices. Violations of these laws may be punishable by criminal and/or civil sanctions, including, in some

instances, substantial fines, imprisonment, and exclusion from participation in federal and state health care programs, including Medicare, Medicaid, and Veterans Administration health programs. These laws and regulations are broad in scope and they are subject to change and evolving interpretations, which could require AbbVie to incur substantial costs associated with compliance or to alter one or more of its sales or marketing practices. In addition, violations of these laws, or allegations of such violations, could disrupt AbbVie's business and result in a material adverse effect on its business and results of operations.

23.     On February 20, 2015, the Company filed its annual report for the fiscal year ended December 31, 2014 on Form 10-K (the "2014 10-K") with the SEC, which provided the Company's annual financial results and position. The 2014 10-K was signed by Defendants Gonzalez and Chase. The 2014 10-K also contained signed SOX certifications by Defendants Gonzalez and Chase attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

24.     The 2014 10-K enumerated the Company's strategic objectives for 2015 to "continue to drive strong HUMIRA sales growth[,]"stating in relevant part:

**2015 Strategic Objectives**

*In 2015, AbbVie expects sales performance to be driven by continued strong growth from HUMIRA, the launch of VIEKIRA PAK, and sales growth in certain key products including Creon and Duodopa, partially offset by a decline in several products due to generic competition, including AndroGel 1% and the remainder of the lipid franchise.* In addition, AbbVie expects to achieve operating margin improvements while continuing to invest in its pipeline in support of opportunities in oncology, HCV, and immunology, as well as continued investment in key products. AbbVie expects to grow operating cash flows in 2015, which will enable the company to continue to augment its pipeline through concerted focus on strategic licensing, acquisition and partnering activity and returning cash to shareholders via dividends and share repurchases.

Class Action Complaint for Violation of the Federal Securities Laws

> ***AbbVie expects to continue to drive strong HUMIRA sales growth in several ways. AbbVie seeks to expand the HUMIRA patient base by applying for regulatory approval of new indications for HUMIRA, treating conditions such as uveitis and hidradenitis suppurativa. AbbVie will also seek to drive HUMIRA sales growth by expanding its market share and its presence in underserved markets. AbbVie plans to continue making investments in key emerging markets, including Brazil, China, and Russia.***

(Emphasis added.)

25.    The 2014 10-K stated the Company is subject to anti-kickback laws and state laws relating to sales and marketing practices, stating in relevant part:

> **Laws and regulations affecting government benefit programs could impose new obligations on AbbVie, require it to change its business practices, and restrict its operations in the future.**
>
> The health care industry is subject to various federal, state, and international laws and regulations pertaining to government benefit programs reimbursement, rebates, price reporting and regulation, and health care fraud and abuse. In the United States, these laws include anti-kickback and false claims laws, the Medicaid Rebate Statute, the Veterans Health Care Act, and individual state laws relating to pricing and sales and marketing practices. Violations of these laws may be punishable by criminal and/or civil sanctions, including, in some instances, substantial fines, imprisonment, and exclusion from participation in federal and state health care programs, including Medicare, Medicaid, and Veterans Administration health programs. These laws and regulations are broad in scope and they are subject to change and evolving interpretations, which could require AbbVie to incur substantial costs associated with compliance or to alter one or more of its sales or marketing practices. In addition, violations of these laws, or allegations of such violations, could disrupt AbbVie's business and result in a material adverse effect on its business and results of operations.

26.    On February 19, 2016, the Company filed its annual report for the fiscal year ended December 31, 2015 on Form 10-K (the "2015 10-K") with the SEC, which provided the Company's annual financial results and position. The 2015 10-K

was signed by Defendants Gonzalez and Chase. The 2015 10-K also contained signed SOX certifications by Defendants Gonzalez and Chase attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

27.    The 2015 10-K enumerated the Company's strategic objectives for 2016 to increase "HUMIRA sales growth[,]" stating in relevant part:

**2016 Strategic Objectives**

AbbVie's mission is to be an innovation-driven, patient-focused specialty biopharmaceutical company capable of achieving top-tier financial performance through outstanding execution and a consistent stream of innovative new medicines. ***AbbVie intends to continue to advance its mission in a number of ways, including (i) growing revenues through continued strong performance from its existing portfolio of on-market products, including its flagship brands, HUMIRA, IMBRUVICA and VIEKIRA PAK, as well as growth from pipeline products;*** (ii) expanding gross and operating margins; (iii) continued investment in its pipeline in support of opportunities in immunology, oncology, and virology, as well as continued investment in key on-market products; (iv) augmentation of its pipeline through concerted focus on strategic licensing, acquisition and partnering activity with a focus on identifying compelling programs that fit AbbVie's strategic criteria; and (v) returning cash to shareholders via dividends and share repurchases. In addition, AbbVie anticipates several regulatory submissions and key data readouts from key clinical trials in 2016.

***AbbVie expects to achieve its revenue growth objectives as follows:***
• ***HUMIRA sales growth by driving biologic penetration across disease categories, increasing market leadership, strong commercial execution and expansion to new indications for hidradenitis suppurativa (regulatory approval in the United States and EU achieved in 2015) and uveitis (regulatory submissions in the United States and the EU are under review with approval expected in 2016).***

(Emphasis added.)

28.     The 2015 10-K stated the Company is subject to anti-kickback laws and state laws relating to sales and marketing practices, stating in relevant part:

**Laws and regulations affecting government benefit programs could impose new obligations on AbbVie, require it to change its business practices, and restrict its operations in the future.**

The health care industry is subject to various federal, state, and international laws and regulations pertaining to government benefit programs reimbursement, rebates, price reporting and regulation, and health care fraud and abuse. In the United States, these laws include anti-kickback and false claims laws, the Medicaid Rebate Statute, the Veterans Health Care Act, and individual state laws relating to pricing and sales and marketing practices. Violations of these laws may be punishable by criminal and/or civil sanctions, including, in some instances, substantial fines, imprisonment, and exclusion from participation in federal and state health care programs, including Medicare, Medicaid, and Veterans Administration health programs. These laws and regulations are broad in scope and they are subject to change and evolving interpretations, which could require AbbVie to incur substantial costs associated with compliance or to alter one or more of its sales or marketing practices. In addition, violations of these laws, or allegations of such violations, could disrupt AbbVie's business and result in a material adverse effect on its business and results of operations.

29.     On February 17, 2017, the Company filed its annual report for the fiscal year ended December 31, 2016 on Form 10-K (the "2016 10-K") with the SEC, which provided the Company's annual financial results and position. The 2016 10-K was signed by Defendants Gonzalez and Chase. The 2016 10-K also contained signed SOX certifications by Defendants Gonzalez and Chase attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

30.     The 2016 10-K enumerated the Company's strategic objectives for 2017 to drive "HUMIRA sales growth[,]"stating in relevant part:

**2017 Strategic Objectives**

AbbVie's mission is to be an innovation-driven, patient-focused specialty biopharmaceutical company capable of achieving top-tier financial performance through outstanding execution and a consistent stream of innovative new medicines. ***AbbVie intends to continue to advance its mission in a number of ways, including: (i) growing revenues through continued strong performance from its existing portfolio of on-market products, including its flagship brands, HUMIRA and IMBRUVICA as well as growth from pipeline products;*** (ii) expanding operating margins; (iii) continued investment in its pipeline in support of opportunities in immunology, oncology, virology and neurology as well as continued investment in key on-market products; (iv) augmentation of its pipeline through concerted focus on strategic licensing, acquisition and partnering activity with a focus on identifying compelling programs that fit AbbVie's strategic criteria; and (v) returning cash to shareholders via dividends and share repurchases. In addition, AbbVie anticipates several regulatory submissions and key data readouts from key clinical trials in the next twelve months.

***AbbVie expects to achieve its strategic objectives as follows:***

- ***HUMIRA sales growth by driving biologic penetration across disease categories, increasing market leadership and strong commercial execution.***

(Emphasis added.)

31. The 2016 10-K stated the Company is subject to anti-kickback laws and state laws relating to sales and marketing practices, stating in relevant part:

**Laws and regulations affecting government benefit programs could impose new obligations on AbbVie, require it to change its business practices, and restrict its operations in the future.**

The health care industry is subject to various federal, state and international laws and regulations pertaining to government benefit programs reimbursement, rebates, price reporting and regulation and health care fraud and abuse. In the United States, these laws include anti-kickback and false claims laws, the Medicaid Rebate Statute, the Veterans Health Care Act and individual state laws relating to pricing and sales and marketing practices. Violations of these laws may be

Class Action Complaint for Violation of the Federal Securities Laws

punishable by criminal and/or civil sanctions, including, in some instances, substantial fines, imprisonment and exclusion from participation in federal and state health care programs, including Medicare, Medicaid and Veterans Administration health programs. These laws and regulations are broad in scope and they are subject to change and evolving interpretations, which could require AbbVie to incur substantial costs associated with compliance or to alter one or more of its sales or marketing practices. In addition, violations of these laws, or allegations of such violations, could disrupt AbbVie's business and result in a material adverse effect on its business and results of operations.

32.     On February 16, 2018, the Company filed its annual report for the fiscal year ended December 31, 2017 on Form 10-K (the "2017 10-K") with the SEC, which provided the Company's annual financial results and position. The 2017 10-K was signed by Defendants Gonzalez and Chase. The 2017 10-K also contained signed SOX certifications by Defendants Gonzalez and Chase attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

33.     The 2017 10-K enumerated the Company's strategic objectives for 2018 to drive "HUMIRA sales growth[,]"stating in relevant part:

**2018 Strategic Objectives**

AbbVie's mission is to be an innovation-driven, patient-focused specialty biopharmaceutical company capable of achieving top-tier financial performance through outstanding execution and a consistent stream of innovative new medicines. AbbVie intends to continue to advance its mission in a number of ways, including: (i) growing revenues by diversifying revenue streams, driving late-stage pipeline assets to the market and ensuring strong commercial execution of new product launches; (ii) continued investment and expansion in its pipeline in support of opportunities in immunology, oncology and neurology as well as continued investment in key on-market products; (iii) expanding operating margins; and (iv) returning cash to shareholders via dividends and share repurchases. In addition, AbbVie

Class Action Complaint for Violation of the Federal Securities Laws

anticipates several regulatory submissions and key data readouts from key clinical trials in the next twelve months.

*AbbVie expects to achieve its strategic objectives through:*

- *HUMIRA sales growth by driving biologic penetration across disease categories, maintaining market leadership and effectively managing biosimilar erosion.*

(Emphasis added).

34. The 2017 10-K stated the Company is subject to anti-kickback laws and state laws relating to sales and marketing practices, stating in relevant part:

**Laws and regulations affecting government benefit programs could impose new obligations on AbbVie, require it to change its business practices, and restrict its operations in the future.**

The health care industry is subject to various federal, state and international laws and regulations pertaining to government benefit programs reimbursement, rebates, price reporting and regulation and health care fraud and abuse. In the United States, these laws include anti-kickback and false claims laws, the Medicaid Rebate Statute, the Veterans Health Care Act and individual state laws relating to pricing and sales and marketing practices. Violations of these laws may be punishable by criminal and/or civil sanctions, including, in some instances, substantial fines, imprisonment and exclusion from participation in federal and state health care programs, including Medicare, Medicaid and Veterans Administration health programs. These laws and regulations are broad in scope and they are subject to change and evolving interpretations, which could require AbbVie to incur substantial costs associated with compliance or to alter one or more of its sales or marketing practices. In addition, violations of these laws, or allegations of such violations, could disrupt AbbVie's business and result in a material adverse effect on its business and results of operations.

(Emphasis added).

35. The statements contained in ¶¶19-34 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse

Class Action Complaint for Violation of the Federal Securities Laws

facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) AbbVie's strategy to increase the sales growth of its blockbuster drug, HUMIRA, was through illegal kickbacks and unlawful sales and marketing tactics; (2) such practices would lead to heightened scrutiny by State governments and agencies; and (3) as a result, Defendants' public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

36. On September 18, 2018, Bloomberg published an article entitled, "California Sues AbbVie Over Alleged Arthritis Drug Kickbacks," asserting the State of California filed a lawsuit against AbbVie for engaging in a kickback scheme aimed to boost HUMIRA sales (the "California Complaint"). The article provides that the lawsuit seeks damages involving "private insurance claims." The article states, in relevant part:

> California's insurance regulator is suing AbbVie Inc., alleging that the pharmaceutical giant gave illegal kickbacks to health-care providers in order to keep patients on its blockbuster rheumatoid arthritis drug Humira.

> The company "engaged in a far-reaching scheme including both classic kickbacks -- cash, meals, drinks, gifts, trips, and patient referrals -- and more sophisticated ones -- free and valuable professional goods and services to physicians to induce and reward Humira prescriptions," the California Department of Insurance said in a statement.

> According to the state, AbbVie paid for registered nurses that it called ambassadors to help doctors with patients who were taking Humira. While the nurses were represented to patients as an extension of the doctor's office, they were trained to tout the drug while downplaying its risks, the state said.

"AbbVie spent millions convincing patients and health care professionals that AbbVie Ambassadors were patient advocates -- in fact, the Ambassadors were Humira advocates hired to do one thing, keep patients on a dangerous drug at any cost," Insurance Commissioner Dave Jones said in the statement.

The alleged misconduct "is particularly egregious because it's well known the drug has very adverse side effects," said Jones in a press conference. Under the ambassador system, complaints or concerns about serious infections, blood problems, or even heart failure -- all known side effects of Humira -- could go unreported to patients' physicians, he said.

* * *

Humira is one of the world's biggest-selling medications. The drug brought in $18.4 billion in 2017, accounting for roughly two-thirds of North Chicago, Illinois-based AbbVie's revenue. Private insurers have paid out $1.2 billion in Humira-related claims, according to Jones.

* * *

Jones is intervening in a whistleblower complaint filed in California by a nurse who was employed as an AbbVie ambassador in Florida several years ago. The suit, filed in Alameda County Superior Court, seeks three times the amount of each claim made for Humira as a result of the alleged kickbacks. The lawsuit involves private insurance claims, said Nancy Kincaid, a spokeswoman for the California Department of Insurance.

37.    According to the California Complaint, relator-plaintiff Lazaro Suarez worked for AbbVie via its sub-contractor, Quintiles Transactional Holdings, Inc., as a "Nurse Educator" and "Patient Ambassador" from approximately March 23, 2013 and October 2014. In that position, he "became aware of AbbVie's [kickback] scheme nationwide, including in California, because of his role as a trainer, among other ways. After leaving his employment, Mr. Suarez continued to obtain information about the allegations [described in the California Complaint], including

through ongoing contacts with AbbVie and Quintiles personnel." The California Complaint states the alleged fraudulent conduct occurred from 2013 to the present.

38.     On this news, shares of AbbVie fell $4.35 per share or over 4.5% over the next two consecutive trading days to close at $91.02  per share on September 19, 2018.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of AbbVie during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

40.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, AbbVie securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

42.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and

securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

43.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

- whether the prices of AbbVie securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

44.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

45.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- AbbVie securities are traded in efficient markets;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold AbbVie securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

46.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

47.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

## Violation of Section 10(b) of The Exchange Act and Rule 10b-5

## Against All Defendants

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49. This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

50. During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

51. The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of AbbVie securities during the Class Period.

52. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with

the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

53.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

54.    As a result of the foregoing, the market price of AbbVie securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of AbbVie securities during the Class Period in purchasing AbbVie securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

55.    Had Plaintiff and the other members of the Class been aware that the market price of AbbVie securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased AbbVie securities at the artificially inflated prices that they did, or at all.

56.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

57.    By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial

Class Action Complaint for Violation of the Federal Securities Laws

damages which they suffered in connection with their purchases of AbbVie securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

58.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

60.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

61.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of AbbVie securities.

62.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being

directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

63. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: September 21, 2018          Respectfully submitted,


                                   **THE ROSEN LAW FIRM, P.A.**

                                   By: /s/ Laurence M. Rosen

Class Action Complaint for Violation of the Federal Securities Laws

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com


*Counsel for Plaintiff*

Class Action Complaint for Violation of the Federal Securities Laws